872 So.2d 1232 (2004)
Alfred E. BRANDON
v.
LOCKHEED MARTIN CORP.
No. 2003-CA-1917.
Court of Appeal of Louisiana, Fourth Circuit.
April 14, 2004.
*1233 Alfred E. Brandon, Jr., New Orleans, LA, In Proper Person, Plaintiff/Appellant.
J. Jerome Burden, Peter G. Wright, Baton Rouge, LA, for Defendant/Appellee (Louisiana Department of Labor).
Barbara Ryniker Evans, Anne E. Bendernagel, Evans & Associates, New Orleans, LA, for Defendant/Appellee (Lockheed Martin Corporation).
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE).
PATRICIA RIVET MURRAY, Judge.
This is an unemployment compensation case. The plaintiff, Alfred Brandon, appeals the judgment of the trial court affirming the decision of the Board of Review of the Office of Regulatory Services disqualifying him from unemployment compensation benefits. Finding no disqualifying misconduct, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND
Mr. Brandon was employed full-time by Lockheed Martin Corporation for twenty-one years, spanning from November 17, 1977 to September 21, 1998. On September 21, 1998, he was discharged for two recent incidents of alleged employee misconduct: (i) sleeping on the job on Wednesday, September 16, 1998; and (ii) taking an unauthorized, extended lunch break on Friday, September 18, 1998. At the time of his discharge, Mr. Brandon's was *1234 employed as a production control processor, and his rate of pay was $16.58 per hour. He worked the second shift, which was from 3:30 p.m. to midnight on Monday through Thursday, and from 2:00 p.m. to 11:00 p.m. on Friday.
The reason for discharge listed on Mr. Brandon's separation notice was "violation of prior disciplinary action agreement concerning future conduct." The record reflects that the prior disciplinary action agreement was dated January 13, 1998, and read as follows:
"On December 22, 1997, at approximately 8:40 P.M. you were caught sitting down watching "Monday Night Football" on television during your scheduled work hours.
The main gate into the stockroom area, which is normally open, was chain locked from the inside. The south lunchroom door was also locked. The only means to enter was by knocking on the locked lunchroom door or by key through the receiving office area, and walk around to the north lunchroom door.
This is a very serious violation of company rules which forbid leaving your work area without authorization, idling/loafing by watching television during working hours and the use of government/company equipment for other than official business. Normally, discipline for this offense is discharge. However, the company is willing, on a non-precedent setting basis, to reduce the discharge to a thirty (30) work day suspension without pay commencing January 13, 1998. You will return to work at the start of your regular scheduled shift, February 26, 1998. Any future same or similar act(s) will result in your immediate discharge." (Emphasis supplied).
Mr. Brandon subsequently filed a claim for unemployment compensation benefits. On November 19, 1998, the Department of Labor notified Mr. Brandon that he was disqualified from receiving benefits pursuant to La. R.S. 23:1601(2) because of his "failure to abide by company rules/policies." The notice further stated that he was aware of those rules or policies and that his discharge was for misconduct connected with the employment. On November 23, 1998, Mr. Brandon requested an appeal.
On December 8, 1998, a hearing was held before an administrative law judge ("ALJ"). At that hearing, Mr. Brandon appeared and was represented by a union representative, Bennie McCormick. Mr. Brandon also was accompanied by a co-worker, Donna White, who testified on his behalf. Lockheed Martin was represented at the hearing by Wesley Bayas, Employee Labor Relations representative, and Lucius Ledet, Second Shift Superintendent. Mr. Ledet was the person who filed the complaint regarding the September 18th extended lunch break incident. At the hearing, he testified regarding that incident. Susan Barbay, Production Operations Supervisor, was the person who filed the complaint regarding the September 16th sleeping incident; however, she did not attend the December 8th hearing. Instead, her e-mail, dated December 7, 1998, addressed to Mr. Bayas was produced. Her e-mail stated that she would not be able to attend the hearing on the next day because she had to attend the funeral of a close family member at the same time as the scheduled hearing. The e-mail further stated that she could be reached by phone or pager later that day if needed. The e-mail still further stated that she had spoken with Mr. Ledet and that he had informed her that he would be available to represent production operations at the hearing.
*1235 Also produced at the hearing was Ms. Barbay's written statement dated September 16th regarding the sleeping incident, which stated:
At approximately 1830 hr., on Wednesday, Sept. 16, 1998, I observed an electric scooter, assigned for exclusive use of D/368X employees unsecured and abandoned in the aisle outside SCC1 office area, Bldg. 103/H7. This scooter is used by Alfred Brandon on 2nd shift.
I went inside the closest office and called out for Alfred, but an unknown individual responded, "Alfred's not in here". I drove the scooter back to LCC# 4, Bldg. 103/E7.
When I arrived, the LCC gate was open. I entered the LCC. Alfred was not immediately visible. He was not at his desk, but sitting at his co-worker's desk which has a desk organizer that blocks another 18 inches of viewing from the aisle or LCC entry.
His right arm was folded under his head. His eyes were closed. I stood at the edge of the desk and in a normal tone said, "Alfred". With no response, I spoke a little louder. "Alfred". Again, no response. I was carrying a bottle of chilled water, so I nudged his left arm with it and said, "Excuse me, Alfred?"
When he woke up, his eyes glared at me as in a state of confusion. It was obvious that he had been sound asleep.
The purpose for my being in the area was to discuss the scooter incident. As the conversation progressed, he became argumentative and I realized that any mention of the sleeping issue would be to no avail.
I left the area and went to my office. I informed department management of the incidents and requested that Industrial Relations be notified.
On December 9, 1998, the ALJ rendered a decision in favor of Mr. Brandon, reversing and removing the Agency's determination that he was disqualified. In its opinion, the ALJ stated:
[T]he claimant was discharged from the employment for two incidents, one of which alleged that he was sleeping at work and the other incident was returning to work late after his lunch break. The employer has not substantiated with firsthand testimony that the claimant was sleeping at work, and the claimant denied doing so. The facts presented, primarily through the claimant's witness, show that the claimant was briefly late returning from his lunch break. However, the facts presented do not substantiate that it was anything other than an unintentional oversight on the part of the claimant. Such an oversight does not substantiate a charge of misconduct connected with the employment. Therefore, the claimant should not be disqualified.
On December 17, 1998, Lockheed Martin filed an appeal with the Office of Regulatory Services (the "Board of Review"). Lockheed Martin argued that it should be afforded another hearing to allow Ms. Barbay to testify. On February 5, 1999, the Board of Review issued an opinion remanding the matter for a new ALJ hearing. In so doing, the Board of Review stated:
Ms. Sue Barbay, key witness for the employer, was unable to attend the [December 8, 1998] hearing due to the funeral of a close family member. The Administrative Law Judge did note her absence for the record during the hearing. Although the employer did not request a postponement or continuance at the time of the hearing, the employer, *1236 in their letter of appeal to the Board, requested another hearing to give Ms. Barbay an opportunity to testify. The Board finds that due process warrants giving the employer the benefit of the doubt related to this matter. The hearing will be remanded to allow the employer's witness to testify.
The Board of Review also noted that "[i]t is imperative that the parties involved resubmit all evidence and give testimony at the remand hearing so that the record can be properly established."
On March 1, 1999, the remand hearing was held before the ALJ. At the outset, the ALJ expressly noted for the record that "we're starting all over as if that otherthat prior hearing had nothad never even occurred." At that hearing, Mr. Brandon was again represented by Mr. McCormick. Lockheed Martin was again represented by Mr. Bayas. Also attending and testifying on behalf of Lockheed Martin was Ms. Barbay. At this hearing, however, Mr. Ledet was not present; he was working out of town.
On March 2, 1999, the ALJ rendered its decision finding Mr. Brandon was disqualified from receiving unemployment compensation. Summarized, the ALJ's factual findings were as follows:
 Mr. Brandon was issued a disciplinary warning and suspended for thirty days after being accused of watching television during his scheduled work hours on December 22, 1997. He also was warned that any future similar acts would result in his immediate discharge. Although he appealed his suspension through the Employee-Union Management Agreement, his grievance was denied on January 27, 1998, and Mr. McCormick withdrew the grievance as the union representative.
 Ms. Barbay was the custodian of, and responsible for, two motorized scooters. Lockheed Martin provided these scooters to designated employees whose job duties required them to travel extensively throughout the large Michoud facility. Ms. Barbay designated only certain employees as authorized to use the scooters. She also insisted that these employees keep the scooters padlocked at all times when not in use. Mr. Brandon was a designated employee who was authorized to use one of the scooters.
 On several occasions, Ms. Barbay noticed Mr. Brandon's assigned scooter unlocked when not in use. She generally would put a padlock on it. In response, Mr. Brandon filed a grievance against Ms. Barbay, expressing his disagreement with her over whether he had to lock the scooter when he briefly walked away from it. Management initially denied his grievance on March 25, 1998. Ms. Barbay continued to insist that he lock the scooter when it was not in use and that he was the only one authorized to use it.
 On September 16, 1998, at about 6:30 p.m., before Mr. Brandon's scheduled lunch break, Ms. Barbay noticed his designated scooter parked outside a building away from his office. The scooter was unlocked. She immediately went inside the building to check if Mr. Brandon was there, but did not find him there.[1] She then drove the scooter to Mr. Brandon's office area and locked it. When she entered his *1237 office area, she found Mr. Brandon sitting at a coworker's desk lying with his head and arm down on the desk. His eyeglasses were on the desk; his eyes were closed.
 Ms. Barbay called out Mr. Brandon's name in a normal tone of voice, but he did not respond. Speaking louder, she repeated his name, but he still did not respond. She had a bottle of cold water in her hand, which she used to gently nudge him. At that point, he woke up and responded. Her first question to him was why was the scooter unlocked and at another location without him. He responded by objecting loudly and arguing with her. He informed her that he had loaned the scooter to a coworker and that he had the authority to do so because he was a supervisor. He also loudly objected regarding the need to lock the scooter. Ms. Barbay opposed his responses, but he continued to argue loudly. She stated that any further questioning of Mr. Brandon about the sleeping incident would simply have escalated the already argumentative situation and that she would have been unable to resolve it at that time. Although she walked away, on that same day she reported the sleeping incident to management and to Mr. Bayas' office.
 Also on September 16, 1998, Mr. Brandon filed a grievance, alleging that Ms. Barbay was harassing him by repeatedly counseling him about his use of the scooter.
 Before Mr. Bayas could investigate the complaints regarding the September 16th incidents, he allegedly found Mr. Brandon taking an extended lunch break on Friday, September 18, 1998. Mr. Brandon's scheduled lunch break on Friday was between 6:30 and 7:00 p.m. Mr. Brandon denied extending his lunch break and maintained that he ended his break and returned to his duties at 7:00 p.m. on that Friday evening.
 On Monday, September 21, 1998, Mr. Brandon's final day of work, Mr. Bayas questioned him regarding the September 16, 1998, and September 18, 1998, complaints.
 On September 24, 1998, Lockheed Martin notified Mr. Brandon that: (i) his grievance against Ms. Barbay regarding the use of the scooter was denied because she was performing her normal supervisory functions when she questioned him, and (ii) he was discharged for sleeping at work on September 16, 1998, and taking an extended lunch break on September 18, 1998.[2]
Based on those factual findings, the ALJ's articulated findings of law were as follows:
[T]he claimant was discharged for two separate, recent, incidents which were investigated by the employer. The incident concerning an extended lunch break was not substantiated in this hearing. The claimant denied it and the employer presented no firsthand testimony concerning that incident. However, the employer has substantiated the other recent incident when he was caught sleeping while on duty. He did this after previously having been given a final warning and suspension for another *1238 incident when he was inattentive at work and not performing his duties. Under these circumstances, it must be determined that the claimant was discharged from the employment due to misconduct connected with the employment.
On May 21, 2000, the Board of Review, in a three-to-two decision, adopted the ALJ's findings as it own and affirmed the ALJ's March 2, 1999 decision. Expressing their belief that Mr. Brandon should receive benefits, the dissenters (i.e., the Board's vice-chairman and secretary) stated:
The claimant had been warned about his previous conduct and had signed a last chance agreement indicating that he would be discharged should any future incidents of misconduct occur. There is no evidence in the records or testimony to substantiate a claim of misconduct with regard to sleeping on the job or abusing a 30 minute lunch period.
On June 4, 1999, Mr. Brandon filed a petition for review in the Civil District Court against Lockheed Martin. In response to Lockheed Martin's exception of nonjoinder, Mr. Brandon filed a supplemental and amending petition adding the Admistrator of the Division of Employment Security of the Louisiana Department of Labor (the "Administrator") as a party. See La. R.S. 23:1634(A)(providing that "[t]he administrator shall be deemed to be a party to any such [judicial review] proceeding").
On November 13, 2001, the trial court judge rendered judgment affirming the Board of Review's decision. In its reasons for judgment, the trial court noted that although it lacks the authority to receive additional evidence, it possesses "the authority to review the proceedings in their entirety when deciding if sufficient evidence was presented to substantiate the facts found by the Board of Review."[3] Affirming the Board of Review's decision, which in-turn affirmed the ALJ's decision, as correct as a matter of law, the trial court reasoned:
Ms. Susan Barbay, a production supervisor testified that she observed Mr. Brandon sleeping in his work area on September 16, 1998, and that she made a report of her observations.... There was sufficient evidence Mr. Brandon was sleeping while on duty and that he had previously been suspended and given a warning that future insurrections would result in his termination.
The instant pro se appeal by Mr. Brandon followed.

DISCUSSION
Judicial review in unemployment proceedings is limited by La. R.S. 23:1634, which provides that "findings of the Board of Review as to the facts, if supported by *1239 sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court (on appeal) shall be confined to questions of law." La. R.S. 23:1634(B). Based on this statutory provision, the jurisprudence has defined judicial review, in cases such as this one, as requiring the following two-step process: "first, determination of whether the facts are supported by competent evidence, and second, whether the facts, as a matter of law justify the action taken." Butler v. Gerace, 506 So.2d 619 (La.App. 4th Cir.1987).
Judicial review "does not entail the weighing of evidence, drawing of inferences, re-evaluation of evidence or substituting the views of this court for those of the Board of Review as to the correctness of the facts." Dipol v. Administrator, Office of Employment Sec. of Louisiana Dep't. of Labor, 526 So.2d 393, 394 (La.App. 4th Cir.1988). Nonetheless, "there must be legal and competent evidence to support the factual findings on which the administrative determination turns." Id. Simply stated, the Board of Review's findings "are conclusive if supported by sufficient evidence, since sufficiency of the evidence is always a question of law." Charbonnet v. Gerace, 457 So.2d 676, 679 (La.1984). Absent fraud, the Board of Review's factual findings are conclusive, limiting judicial review to legal questions. Toney v. Francis, 618 So.2d 597, 599 (La.App. 2d Cir.1993)(citing Charbonnet, supra).
The employer has the burden of providing disqualifying misconduct by a preponderance of the evidence. Charbonnet, 457 So.2d at 679. In this case, the applicable statutory provision under which Mr. Brandon was disqualified from receiving benefits is La. R.S. 23:1601(2)(a), which defines disqualifying misconduct to mean:
[M]ismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.
La. R.S. 23:1601(2)(a). Although the above definition of misconduct was adopted by the Legislature in 1990, the jurisprudence has continued to apply an earlier, judicially crafted standard in determining if disqualifying misconduct is present.[4] The Louisiana Supreme Court's most recent statement of that standard was enunciated by former Justice Lemmon in Charbonnet as follows:
For a claimant to be disqualified from benefits because of "misconduct connected with his employment" under La. R.S. 23:1601(2), the "misconduct" must have resulted from willful or wanton disregard of the employer's interest, from a deliberate violation of the employer's rules, or from a direct disregard of standards of behavior which the employer *1240 has the right to expect from his employees. Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3rd Cir.1976). The type of behavior which is considered "willful misconduct" is intentional wrong behavior. Banks v. Administrator of Employment Security, 393 So.2d 696 (La.1981). Because of the beneficial purpose of unemployment compensation, the term "misconduct" should be construed so as to favor the awarding of benefits rather than disqualification.

Charbonnet, 457 So.2d at 678.
Turning to the present case, Mr. Brandon in his pro se brief lists multiple assignments of error. The gist of his arguments is that the agency's finding of disqualifying misconduct is neither factually, nor legally supported. Factually, he argues that Ms. Barbay's testimony that she caught him sleeping was unsupported for three reasons: (1) because there were no other witnesses, (2) because her testimony was inconsistent in certain respects with her prior statements, and (3) because of the ongoing personality conflict between them as evidenced by the prior grievances he had filed against her. He further argues that because the prior warning was not listed as a reason for his termination in the Notice to Appear for Hearing before the ALJ, it was improper for the agency to consider that prior warning.[5] Legally, he argues that the agency failed to apply the correct legal standard for determining disqualifying misconduct.
Although we find Mr. Brandon's contentions challenging the factual findings of the ALJ belied by the jurisprudence, we find his contentions challenging the legal finding of disqualifying misconduct persuasive.[6] The record reflects that there was sufficient evidence to support the facts as found by the ALJ, and adopted by the Board of Review. The narrow issue before us is whether the agencies' conclusion that Mr. Brandon's conduct constituted disqualifying misconduct was legally erroneous. As noted, the sole basis on which the ALJ found Mr. Brandon was disqualified was the September 16, 1998 sleeping incident. We find, as a matter of law, that Mr. Brandon's falling asleep at his co-worker's desk on one occasion was not disqualifying misconduct.[7]
*1241 Lockheed Martin, supported by the Administrator, argues that sleeping on the job is disqualifying misconduct because it is a violation of an employer's reasonable workplace rule.[8] Likewise, in affirming the agency, the trial court characterized Mr. Brandon's termination as being for violation of "work hour policies." The jurisprudence, however, has recognized that not every violation of an employer's workplace rule constitutes disqualifying misconduct. See Harville v. ConAgra Poultry Co., 99-773, p. 3 (La.App. 3 Cir. 11/24/99), 768 So.2d 42, 45. The determination of whether a violation of such rule constitutes disqualifying misconduct is determined "not by the employer's rules, but by the statute." Cabezas v. Administrator, Div. of Employment Sec., 557 So.2d 985, 988 (La.App. 4th Cir.1990). In determining if the violation of such rule constitutes disqualifying misconduct, "one must look to the nature of the violation with due consideration to the factors which enter into the proper conduct of the employer's business." Hardeman v. Blache, 605 So.2d 671, 674 (La.App. 2d Cir.1992).
Again, the nature of the violation at issue here is sleeping on the job. The Louisiana jurisprudence addressing the question of whether sleeping on the job constitutes disqualifying misconduct has answered that question in the affirmative, but has recognized an exception for mitigating circumstances. Illustrative of such mitigating circumstances is Pilgrim, supra, which involved a nurse's aid who dozed off at the nurse's station. In finding the aid's conduct did not constitute a deliberate violation of her employer's rule, the court reasoned that the aid had been called in by her employer to work the night shift on her day off to cover for another employee and thus did not have an opportunity to prepare for working the night shift by resting. The court further noted that the aid had worked for the employer for three and one-half years.
Several Louisiana cases have distinguished Pilgrim and found an employee guilty of disqualifying misconduct for sleeping on the job. Avery v. St. Patrick Hosp. of Lake Charles, 551 So.2d 837, 839 (La.App. 3rd Cir.1989)(finding misconduct when registered nurse fell asleep while working the night shift); Sanders v. Administrator of Office of Employment Sec., 520 So.2d 1091, 1094 (La.App. 3rd Cir. 1987); Allen v. Sumrall, 398 So.2d 108, 110 (La.App. 3rd Cir.1981).
Similar to the Louisiana jurisprudence, the out-of-state jurisprudence has likewise recognized that sleeping on the job may or may not constitute misconduct depending upon the circumstances of the case. See Shauna Cully Wagner, Work-Related Inefficiency, Incompetence, or Negligence as "Misconduct" Barring Unemployment Compensation, 95 ALR5th 329, § 8 (2002). Based on our review of the Louisiana and out-of-state jurisprudence, we have identified four relevant factors the courts generally have considered in determining whether sleeping on the job constitutes disqualifying misconduct:
1. the nature of the employee's job responsibilities;
2. the location in which the employee was found sleeping;

*1242 3. the presence (or absence) of a written rule prohibiting sleeping on the job and prior warnings for sleeping on the job; and
4. any other aggravating or mitigating circumstances.
First, the jurisprudence has generally found sleeping on the job to be misconduct when the employee's job is such that he or she is expected to be alert at all times given the serious consequences that failure to stay alert may present. Examples of such jobs include health care professionals and boiler room operators. See Avery, 551 So.2d at 839 (noting the nurse's supervisor testimony regarding the serious consequences the nurse's sleeping on duty could cause her patients); Jennings v. Unemployment Appeals Comm'n, 689 So.2d 1193 (Fla. 4th DCA 1997)(noting that nursing technician's falling asleep, albeit during her break, was willful misconduct given hospital setting in which she worked and recognizing that in another contexts such conduct would have been simply negligence); Bell v. Appeal Bd. of Michigan Employment Sec. Comm'n, 359 Mich. 649, 103 N.W.2d 584 (1960)(finding misconduct when boiler room worker who fell asleep on job given serious danger posed by worker's failure to stay alert). There is no contention in this case that Mr. Brandon's job falls within this category.
Second, the location in which an employee is found sleeping is significant for two reasons. One, public perception regarding the employer's business may be tainted if an employee is observed sleeping on the job. See Avery, supra (noting that a nurse's sleeping at the nurses' station gives rise to a "public relations problem"). Two, logic dictates that an employee falling asleep outside the designated work area is more egregious conduct than an employee falling asleep at his or her desk, absent a public perception issue. Here, Mr. Brandon was found sleeping inside his work area.[9]
Third, the existence of a written rule and prior violations logically support a fining of misconduct. Indeed, many of the cases that have found sleeping on the job to be misconduct have involved employees who were given prior warnings for the same behavior. See Hall v. Doyal, 191 So.2d 349 (La.App. 3rd Cir.1966)(finding misconduct where employee repeatedly warned about sleeping on the job). Although the record does not contain any evidence that Lockheed Martin had a written rule prohibiting sleeping on the job, we find this type of conduct falls within the category of obvious, expected work place behavior for which an employer need not have an established rule. See Biggs v. Commonwealth, Unemployment Compensation Bd. of Review, 66 Pa. Commw. 117, 120, 443 A.2d 1204, 1206 n. 3 (1982)(finding employee's reliance on absence of established rule prohibiting sleeping on job misplaced and noting that "[a]n employer need not have an established rule where the behavioral standard is obvious.")
Finally, the presence of aggravating or mitigating factors have been considered by the jurisprudence. Even absent prior warnings, other aggravating factors may *1243 warrant a finding of disqualifying misconduct based on a single episode of sleeping on the job. See Auger v. Gillette Co., 303 N.W.2d 255 (Minn.1981)(finding misconduct where two employees who worked the night shift cleaning the premises were found sleeping in a locker room with pillows, blankets, and an alarm clock).
Conversely, the presence of mitigating factors has been recognized as rendering sleeping on the job insufficient to constitute disqualifying misconduct. Pilgrim, supra.; see also Washington v. Board of Review, 211 Ill.App.3d 663, 156 Ill.Dec. 90, 570 N.E.2d 566 (1991)(finding no misconduct by a secretary who fell asleep during a meeting after taking an aspirin for a headache); Lusby v. Unemployment Appeals Comm'n, 697 So.2d 567 (Fla. 1st DCA 1997)(employee taking medication, which he had taken without incident for months, was not guilty of disqualifying misconduct for single incident of falling asleep on job).
In this case, although Ms. Barbay never gave Mr. Brandon the opportunity to explain, Mr. Brandon testified at both hearings that the reason he had his head on a desk and his glasses off was because he had a sinus headache. Although the ALJ's second decision does not mention his testimony, its first decision states:
[T]he claimant was sitting at a desk in his work area when a supervisor, Ms. Sue Barbay, entered the area. He was having sinus problems and was rubbing his eyes and face with his hand when she tapped him on the elbow to inquire if the claimant had loaned to another worker a piece of equipment which she was looking for. He immediately replied that he had. She contested that he did not have the right to do so, and he responded by indicating that the equipment was his responsibility. She did not allege any other problems; however, she later filed a written report alleging that she found the claimant sleeping at the desk when she approached him.
Based on the above analysis, we conclude that Lockheed Martin failed to satisfy its burden of establishing that Mr. Brandon intentionally was napping on the job; rather, we find, at worse, he negligently took a nap due to an apparent sinus headache. We find it significant that Mr. Brandon had been employed by Lockheed Martin for twenty-one years when this incident occurred.
The jurisprudence clearly distinguishes between conduct sufficient to terminate an employee and conduct sufficient to disqualify an employee from unemployment benefits. See Brister v. Whitfield, 522 So.2d 1254, 1256 (La.App. 4th Cir.1988)(noting the standard for disqualification is much higher than the standard for discharging an employee). Although the sleeping incident may have been sufficient to justify discharging Mr. Brandon from employment, especially given the prior disciplinary action agreement, it was not sufficient to establish disqualifying misconduct under the statute.[10]

*1244 DECREE
For the forgoing reasons, the judgment of the trial court is reversed. It is ordered, adjudged, and decreed that the Board of Review, Office of Regulatory Services, State of Louisiana, issue an order directing payment to plaintiff, Alfred Brandon, of the unemployment compensation benefits to which he is entitled.
REVERSED AND RENDERED.
NOTES
[1] An unidentified person informed Ms. Barbay that Mr. Brandon was not in that building. Apparently, this was the same person to whom Mr. Brandon had loaned the scooter.
[2] In its opinion, the ALJ also noted that the agency's notice to appear for hearing advised the parties that the issue to be addressed was Mr. Barndon's discharge from employment "because of sleeping at work and/or returning to work late after his lunch break."
[3] On November 27, 2000, the trial court granted Lockheed Martin's motion to vacate Mr. Brandon's subpoena duces tecum seeking production of documents relating to the administrative hearings. In so doing, the trial court in its written reasons for judgment expressly stated that it would review both administrative hearings. Particularly, in its reasons for judgment the trial court stated:

In order for this Court to accurately review the proceeding the record from the previous hearing of December 8, 1998 must be entered into the record. The March 1, 1999 proceeding indicated that some of the testimony was in direct conflict with testimony given on December 8, 1998. Review of this testimony is necessary to decide if the Board of Review had sufficient evidence to support the findings of facts used in rendering their decision.
[4] This circuit expressly has held that, despite the 1990 amendment enacting a statutory definition of "misconduct," the prior jurisprudential standard will still be applied in determining disqualifying misconduct. See Emke v. Mouton, 617 So.2d 31, 33 (La.App. 4 Cir. 1993); see also Harris v. Houston, 1997-2847, p. 2 (La.App. 4 Cir. 11/4/98), 722 So.2d 1042, 1046 (Byrnes, C.J., concurring). Likewise, the Second, Third, and Fifth Circuit have so held. See Harsco Corp. v. Victoria, XXXX-XXXX, p. 3 (La.App. 3 Cir. 3/20/02), 812 So.2d 871, 874 (collecting cases); see also Taco Bell Corp. v. Perkins, 95-225, pp. 5-7 (La.App. 5 Cir. 9/26/95); 662 So.2d 34, 36-37. Although the First Circuit has not expressly so held, it has continued to apply the pre 1990 jurisprudential standard. See St. Tammany Parish School Bd. v. State, Dep't of Labor, Office of Employment Sec., XXXX-XXXX, p. 6 (La.App. 1 Cir. 5/10/02), 818 So.2d 914, 918(citing Charbonnet, surpa).
[5] Although he also raises other issues regarding Lockheed Martin's fraud in obtaining a remand for a second hearing, we find it unnecessary to address those issues given our finding that Mr. Brandon is not disqualified from receiving benefits for another reason. See King v. Tangipahoa Parish Police Jury, 96-0934, p. 5 (La.App. 1 Cir. 2/14/97), 691 So.2d 194, 197 n. 1 (declining to reach issue of fraud).
[6] First, the testimony of one witness is sufficient to satisfy the employer's burden. Second, credibility issues, such as inconsistencies in testimony, are not appropriate for judicial review. Third, prior warnings for violating employer rules are relevant in determining disqualifying misconduct. As to the personality conflict between him and Ms. Barbay, the record reflects that Mr. Brandon filed several grievances against Ms. Barbay and that they clearly disagreed regarding the use of the scooters. Nonetheless, Mr. Brandon was not discharged because of his disagreement with Ms. Barbay over the use of the scooters; rather, he was discharged because of the sleeping incident.
[7] Nor do we find the prior warning based on the December 1998 incident of watching television supports such a finding. That prior incident occurred nine months before the sleeping incident. There was no evidence introduced to establish any misconduct on Mr. Brandon's part during that intervening nine-month period. Moreover, we find sleeping on the job entirely different in nature than watching television.
[8] Given Ms. Barbay's testimony that she found Mr. Brandon sleeping on the job coupled with the fact he was given a prior warning that any future violation would result in his discharge, they argue that Lockheed Martin clearly met its burden of proving disqualifying misconduct.
[9] Although he was at a co-worker's desk, he explained at the hearing that he did not have a telephone at his own desk. Since his job required he respond when he was paged by phone, he testified that he would sit at his co-workers' desks, which had telephones. These co-workers worked the first shift so their desks were available for his use on the second shift. Mr. Brandon also expressly denied that he was "nesting," i.e., a term used to describe an employee seeking a secretive place to take a nap on the job.
[10] Although Mr. Brandon's discharge was for sleeping on the job, the focus of the hearing was his violation of the rules regarding the use of scooters. Indeed, we find telling the statement in the Administrator's memorandum filed in the trial court that Mr. Brandon's discharge was based on "sleeping on the job and aggravated failure to follow orders from his superior officer." The latter reference is to Mr. Brandon's refusal to abide by Ms. Barbay's rules regarding the scooter. Moreover, Mr. Brandon filed several grievances against Ms. Barbay, and they clearly did not agree regarding the use of the scooters. Nonetheless, even a severe personality clash between an employee and his supervisor, standing alone, does not constitute disqualifying misconduct. Dawkins v. Sumrall, 424 So.2d 407, 408 (La.App. 2d Cir.1982). "While such a personality conflict gives the employer reason for terminating the employee for the employer's own purpose, this alone does not constitute `... the kind of willful and deliberate misconduct that will disqualify the employee from receiving unemployment benefits as provided by law.'" Id. (quoting Caldwell v. Gerace, 378 So.2d 1045 (La.App.2d Cir.1979)).