CHARLES R. JUNES, Chief Judge.
hThe Appellant, New Orleans Private Patrol Inc., seeks review of the judgment of the district court affirming the decision of the Board of Review holding that the refusal of the Appellee, Tonja Kuykendall, to follow company procedures was not misconduct, and that Ms. Kuykendall qualified for unemployment benefits. Finding that the district court did not err in affirming the decision of the Board of Review, we affirm the judgment of the district court.
The Appellee, Tonja Kuykendall, was employed as a security guard by New Orleans Private Patrol (NOPP) from January 8, 1998, to August 24, 2004. NOPP terminated Ms. Kuykendall’s employment due to dereliction of duty and insubordination. She was assigned to guard a parking lot across the street from NOPP’s dispatch office. The parking lot was used by personnel employed in the office building where NOPP leased office space.
While at her post, Ms. Kuykendall was required to stand outside the security booth at the entrance gate of the parking lot to greet, escort and generally provide security to the building personnel. This was particularly necessary when personnel 12were coming and going from the parking lot in the morning, lunchtime and evenings. To that end, Ms. Kuykendall could not leave her post for any reason other than an emergency during these peak hours; namely, from 7:00 a.m. to 9:00 a.m., 11:00 a.m. to 1:30 p.m. and 4:00 p.m. to 5:00 p.m. During any other time, she was free to leave her post. If there was an emergency during a peak period, she was required to call the dispatch office for relief before leaving her post.
On August 24, 2004, on Ms. Kuykendall’s last day of work, she reported to her post shortly before 7:00 a.m.; however, she left her post around 7:30 a.m. to retrieve a fan and log books from the dispatch office. There was a lull between the time people who came to work at 7:30 a.m. and those *795 who came at 8:00 a.m. arrived, so around 7:30 a.m., with permission from her supervisor, Mr. Roland[1], she left her post to pick up the fan and log books at the dispatch office. Mr. Roland stayed at her post in his car directly behind the guard booth.
While at the dispatch office, Ms. Kuyk-endall encountered Vivian Thompson, a sales manager, who instructed Ms. Kuyk-endall to return to her post since it was still during peak hours. Ms. Kuykendall attempted to explain to Ms. Thompson that she was obtaining a fan and some log books, but Ms. Thompson refused to allow Ms. Kuykendall to provide her reasons, and continued to instruct Ms. Kuykendall to return to her post. In addition to her instructions, Ms. Thompson made numerous remarks to Ms. Kuykendall about her constant visits to the office for things that are unrelated to her employment duties. During this time, Rthe two women argued for approximately five to ten minutes, with Ms. Kuykendall continuously attempting to explain the circumstances to Ms. Thompson. After several minutes of argument between Ms. Kuykendall and Ms. Thompson, Ms. Kuykendall was discharged for insubordination and dereliction of duties.
Ms. Kuykendall applied for unemployment compensation benefits which were initially granted. NOPP appealed to the Administrative Law Judge (ALJ), issued a notice to Ms. Kuykendall to appear for a hearing on the issue of her discharge because of insubordination and the issue of misconduct to also be considered. The ALJ, after holding a hearing wherein testimony was heard, held that Ms. Kuykendall was discharged for being insubordinate to a member of management. The ALJ also determined that NOPP was not unreasonable to reprimand Ms. Kuykendall and insist that she follow company procedures. The ALJ concluded that her refusal to follow company procedures was misconduct and disqualified her from benefits. Ms. Kuykendall appealed to the Board of Review, which reversed the judgment of the ALJ. The Board of Review held that Ms. Kuykendall was discharged for insubordination though her insubordination was not intentional and her acts did not amount to a denial of benefits. The Board in its opinion stated that Ms. Kuykendall had requested relief before leaving her post and therefore, she did not commit misconduct of her employment duties. Further, the Board held that Ms. Thompson mistakenly assumed Ms. Kuykendall left her post unattended, leading to the argument between the two individuals. Thereafter, |4N OPP filed a Petition for Judicial Review in the district court, which affirmed the judgment of the Board of Review. NOPP timely filed this appeal.
NOPP raises two (2) assignments of error on appeal:
1) Finding of facts were not supported by evidence, and
2) The district court’s ruling of no misconduct was incorrect as a matter of law.
The appellate courts scope of judicial review for unemployment compensation benefits is established under La. R.S. 23:1634. La. R.S. 23:1634(B) provides in pertinent part “... In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law. No additional evidence shall be received by the court ...” Id. Judicial review of the findings of fact made in the administrative proceedings in unemploy *796 ment compensation cases “is limited to first, determination of whether the findings of facts are supported by competent evidence, and, second, whether the facts, as a matter of law justify the action taken.” Butler v. Geraee, 506 So.2d 619 (La. App. 4 Cir.1987). See also La. R.S. 23:1634(B); Harris v. Houston, 97-2847 (La.App. 4 Cir. 11/4/98), 722 So.2d 1042, 1045.
In King v. Tangipahoa Parish Police Jury, the First Circuit reasoned that:
Courts may not disturb factual findings of the Board of Review when questions of weight and credibility are involved and when the conclusions are supported by sufficient evidence. Lewis v. Administrator, 540 So.2d 491, 496 (La.App. 1 Cir.1989); O’Neal v. Blanche, 482 |BSo.2d 700, 704 (La.App. 1 Cir.1985). Judicial review of the findings of the board of review does not permit weighing of evidence, drawing of inferences, reevaluation of evidence, or substituting views of the court for that of the board as to the correctness of the facts presented. Lewis, 540 So.2d at 496.
96-0934, p. 4 (La.App. 1 Cir. 2/14/97), 691 So.2d 194,196.
In an unemployment compensation case, the employer has the burden of proving disqualifying misconduct by a preponderance of the evidence. Brandon v. Lockheed Martin Corp., 2003-1917, p. 10 (LaApp. 4 Cir. 4/14/04), 872 So.2d 1232, 1239 citing, Charbonnet v. Gerace, 457 So.2d 676, 679 (La.1984).
In light of the applicable statute and case law, it appears that the judgment of the district court affirming the Board of Review’s findings should be affirmed. Our court’s review of the facts and evidence shows no error in the ruling of the district court affirming the Board of Review’s decision awarding Ms. Kuykendall unemployment benefits. The judgment of the district court affirming the Board of Review confirms both inquiries of La. R.S. 23:1634.
While NOPP raises two issues on appeal, we find that the issues raised are connected and will address them jointly. NOPP argues on appeal that the findings of fact were not supported by evidence. NOPP argues that the Board of Review erred in reversing the ALJ’s decision that Ms. Kuykendall was fired for misconduct and did not deserve unemployment compensation. Ms. Kuykendall admitted to leaving her post on the morning of August 24, 2004, as she did other mornings to retrieve a fan during peak hours. She stated that she was aware of the times she was required to stay at her post and that leaving her post without | ^dispatching a replacement guard would be detrimental to the company as it could lose its contract with its client. Further, that it was also possible that NOPP could face unwarranted individuals entering the lot, thus infringing on the safety of the lot’s occupants. Though NOPP argues important facts, it is precise that Ms. Kuykendall’s actions were not intentional as found by the Board of Review and the district court.
The record reflects that Ms. Kuykendall waited until there was a lull in the employees entering the parking lot before she departed the premises to retrieve the fan from across the street. She had been working at this assigned post for a significant length of time, and she knew the times when the clients arrived at the lot. She would only leave when she was certain that all the clients who arrived during the morning peak hours had arrived. Ms. Kuykendall conducted her employment duties as requested by the employer and her supervisors. Further, on the day in question, Ms. Kuykendall, before leaving the premises, requested permission to leave from her immediate supervisor, Mr. Roland, whom was already present on the *797 lot. He agreed to watch the premises during her absence. Therefore, Ms. Kuykendall did not need to contact the dispatch office to request a replacement guard for her post. Her actions did not lead to intentional misconduct.
The Board of Review concluded that Ms. Kuykendall’s actions on the day in question were a one-time incident, since NOPP failed to prove any previous acts of insubordination by her. Moreover, her actions were supported by the fact that she asked a supervisor to guard her assigned post before leaving. Her actions were not 17reckless nor in disregard of NOPP interests as she left her post in the custody of her immediate supervisor. Misconduct is defined as “mismanagement of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others.” La. R.S. 23:1601(2)(a). “For a claimant to be disqualified from benefits because of misconduct connected with his employment? under La. R.S. 23:1601(2), the misconduct? must have resulted from willful or wanton disregard of the employer’s interest, from a deliberate violation of the employer’s rules, or from a direct disregard of standards of behavior which the employer has the right to expect from his employees.” Brandon v. Lockheed Martin Corp., 2003-1917, p. 10 (La. App. 4 Cir. 4/14/04), 872 So.2d 1232, 1239-40, citing, Pilgrim Manor Nursing Home, Inc. v. Gerace, 337 So.2d 660 (La.App. 3 Cir.1976). An employee who deliberately violates a reasonable rule of his employer is guilty of misconduct and would not be qualified for benefits under the Employment Security Law. Holmes v. Berg, 560 So.2d 500, 502 (La.App. 1 Cir.1990). In cases of alleged disqualifying employee misconduct, the burden of proof as to such misconduct is upon the employer and the misconduct must be proven by a preponderance of the evidence. Charbonnet v. Gerace, 457 So.2d 676, 679 (La.1984); Brister v. Whitfield, 522 So.2d 1254, 1256 (La.App. 4 Cir.1988).
Insubordination toward the employer amounts to misconduct sufficient to disqualify the claimant from receiving unemployment benefits. Rankin v. Doyal, 223 So.2d 214, 217 (La.App. 2 Cir.1969). Further as explained in Melton v. State, Office of Employment Sec., “[A]n employee’s failure to follow a direct order of his supervisor can constitute misconduct under LSA-R.S. 23:1601(2) which would disqualify a claimant from receiving unemployment compensation benefits.” 473 So.2d 925, 927 (La.Ct.App. 3 Cir.1985).
In this matter, NOPP failed to prove by a preponderance of the evidence that Ms. Kuykendall’s actions resulted from a willful or wanton disregard of its interest. Her actions were not egregious to result in the termination of her employment and denial of unemployment benefits. The severity of her wrongdoing was very minimal, as no damages resulted from her actions and her reasons for leaving the premises were reasonable.
Further, NOPP argues that Ms. Kuyk-endall refused to return to her post and perform her duties when requested by a manager. NOPP alleges that Ms. Kuyk-endall, rather than listening to her superi- or, who had previously reprimanded her on several occasions to return to her post, argued with the superior, leading to insubordination.
Ms. Kuykendall was terminated for insubordination, resulting from an argument with Ms. Thompson, a sales manager. Though the argument between the two women ensued from the fact that Ms. Kuykendall left her assigned post, the facts and evidence show that she was ter *798 minated because she insisted on arguing and not following Ms. Thompson’s instructions. Ms. Thompson, upon encountering Ms. Kuykendall. in the dispatch office, chastised and reprimanded her [nfor not being at her assigned post and requested Ms. Kuykendall return to her post immediately. Ms. Thompson, knowing the duties and responsibilities of Ms. Kuykendall’s post, believed Ms. Kuykendall had left her post without relief. This assumption was incorrect.
The ALJ found that Ms. Kuyken-dall was insubordinate, thus denying her claim for unemployment benefits. However, the testimony and evidence of record shows that Ms. Kuykendall’s acts do not amount to insubordination which warrants a denial of unemployment benefits. In reviewing whether Ms. Kuykendall’s insubordination was intentional and premeditated, this court refers to the “single hotheaded incident” doctrine. “There is no rigid rule that every employee gets one tantrum free. Just as a single incident need not absolve the employee a second incident need not condemn him. The showing necessarily depends on all the circumstances.” Gunn v. Gerace, 516 So.2d 1180, 1182 (La.App. 2 Cir.1987). Thus, an employee who is terminated for insubordination due to misconduct relating to her employment, cannot be denied unemployment benefits if the totality of the circumstances show that the incident was a one-time incident.
“This Circuit, and others, have held that a single hot-headed incident’ or accident does not usually amount to disqualification of benefits.” Emke v. Mouton, 617 So.2d 81, 38 (La.App. 4 Cir.1998), citing Gunn v. Gerace, 516 So.2d at 1182. “We recognize and agree with the principle expressed by earlier courts, that unemployment [benefits] is remedial and should not be denied for misconduct absent wanton conduct or such negligence which results in serious damage.” Id. | ^However, “while a single hot-headed incident may not be enough to disqualify a person from unemployment benefits, a court or administrative judge may consider the severity of the incident, whether any damage or how much damage occurred, whether anything provoked the incident, and whether the employee’s behavior was reasonable in light of the circumstances.” Id. at 34. The “single hot-headed incident” doctrine is only applicable if termination of Ms. Kuykendall resulted from one isolated incident. In the matter at hand, NOPP failed to show any previous acts by Ms. Kuyken-dall which amount to misconduct.
In looking at the totality of the circumstances under which Ms. Kuykendall was terminated, the Board of Review did not err in finding that the argument did not amount to an act of insubordination. Here, there was an argument between Ms. Kuykendall and a sales manager. This argument occurred in the early hours of the day in the company’s office. Beside the two individuals involved in the argument, there were only two (2) other employees present. During the argument, Ms. Kuykendall was merely speaking loudly so as to explain the circumstances to Ms. Thompson. Ms. Thompson, who refused to listen to the reason why Ms. Kuykendall was not at her post or why she couldn’t leave immediately to return to her post, would not allow Ms. Kuykendall to speak. Ms. Thompson continued to shout at Ms. Kuykendall and make accusations against her. Thus, Ms. Kuykendall felt the need to continuously attempt to explain herself, leading to her yelling at Ms. Thompson. Further, Ms. Kuykendall’s actions did not cause any damage besides her termination of employment.
|nThe doctrine further requires the analysis of whether anything provoked the in *799 cident. Here, Ms. Kuykendall was provoked by the fact that Ms. Thompson, without knowing the reasons why Ms. Kuykendall was present in the office, immediately began shouting at Ms. Kuyken-dall. Ms. Thompson commanded Ms. Kuykendall to return to her post immediately. When Ms. Kuykendall refused her instructions, she continued shouting at Ms. Kuykendall and further made accusations against her. Ms. Thompson stated her disapproval to Ms. Kuykendall about her continuous trips to the dispatch building to use the bathroom, warm her food and wash her dishes. Ms. Kuykendall felt that she needed to explain her actions and also to refute the accusations being made against her by Ms. Thompson. However, when all her attempts to speak were denied, Ms. Kuykendall resorted to shouting and speaking loudly to Ms. Thompson. Based on the circumstances under which the argument began, it appears that Ms. Kuykendall was provoked, leading to her actions.
Finally, Ms. Kuykendall’s actions were reasonable. Ms. Kuykendall, before leaving her post, acquired permission from her immediate supervisor. Upon Ms. Thompson’s arrival at work and seeing Ms. Kuyk-endall, she immediately assumed Ms. Kuykendall did not have permission or any reasons to justify her presence in the office. She immediately reprimanded Ms. Kuykendall and made further accusations unrelated to the matter against her. Due to this, Ms. Kuykendall felt it necessary to argue with Ms. Thompson to express her reasons and also refute the 1 ^accusations. Ms. Kuykendall was not at fault for trying to explain the situation to Ms. Thompson.
This ease is similar to French v. Whitfield, 561 So.2d 977 (La.App. 4th Cir.1990), and thus, the results should be the same. In French, the appellee, who thought she was leaving work at 5:00 p.m. but rather left at 4:50 p.m. due to a faulty clock, was reprimanded by her employer during the following work day. Ms. French corroborated the time with her co-workers before leaving work at 5:00 p.m. The next day, she was informed that she was terminated for leaving work at 4:50 instead of 5:00 p.m. When Ms. French tried to explain the reason for her early departure, her superior refused to listen and allow her to speak. At this, Ms. French became upset and responded in a loud tone to explain the reasons why she supposedly departed work early the previous evening. Id. Ms. French shouted at her superiors, but it is uncertain whether she insulted her superiors.
Ms. French filed for unemployment benefits after her termination, but was denied benefits by the Office of Employment Security for insubordination. Upon the district court’s judicial review, the court reversed the judgment and awarded her unemployment benefits. In addition to finding numerous discriminatory acts against the appellee, the court found no fault in Ms. French’s attempts to explain the incident. “The testimony at the administrative hearing sufficiently supports that French did not intentionally violate her employer’s rules. French’s position is that she reasonably believed she was departing work on April 27th at 5:00 p.m.” Id. at 979. The district court concluded that this behavior did not constitute the sort of | ^insubordination which rises to the level of misconduct within the meaning of La.R.S. 23:1601(2). Id.
In the matter sub judice, the incident ensued when Ms. Thompson chastised and falsely accused Ms. Kuykendall of not performing her duties as required. Ms. Kuykendall attempted to explain herself to Ms. Thompson, but was not allowed the opportunity. Ms. Kuykendall, like Ms. French, became upset and began speaking loudly at her superior in her attempt to explain herself and refute the accusations *800 being made against her. Her actions were not intentional; thus, it does not amount to the sort of insubordination which justifies a denial of unemployment benefits. Before the Board of Review, NOPP failed to prove that Ms. Kuykendall committed the sort of insubordination and misconduct of her employment duties which aggregate to a denial of unemployment benefits. The Board of Review, after careful evaluations of the law and facts, found that NOPP failed to show that Ms. Kuykendall intentionally acted against her employer’s interests. The Board concluded that there was no single indication that Ms. Kuykendall intended to be insubordinate. NOPP requested a judicial review from the district court, and the district court’s decision in affirming the decision of the Board of Review was based on credible review of the facts, evidence and arguments presented.
The Board of Review considered the facts and evidence and concluded that though Ms. Kuykendall was insubordinate, she did not intend to be insubordinate, as her actions were a result of Ms. Thompson’s refusal to allow her to explain her presence at the dispatch office. Furthermore, the Board concluded that the actions 114of Ms. Kuykendall were reasonable and justifiable under the totality of the circumstances. In conclusion, this Court finds no error in the judgment of the district court affirming the decision of the Board of Review awarding Ms. Kuykendall unemployment benefits.

DECREE

For the forgoing reasons, the judgment of the district court is affirmed.
AFFIRMED
LANDRIEU, J., concurs in the result.

. The last name of Roland does not appear anywhere in the record or transcript.